UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMARIO DAVIS,

    Plaintiff,

v.

CITY OF NOVI, et al.,

    Defendants.

Case No. 16-11846
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART OFFICER FRANCKOWIAK'S AMENDED MOTION FOR SUMMARY JUDGMENT [33]; GRANTING IN PART AND DENYING IN PART ST. JOHN PROVIDENCE, PROVIDENCE PARK HOSPITAL, ELIZABETH PLECHA AND KARA VIDUSIC'S PARTIAL MOTION TO DISMISS [32]; AND GRANTING IN PART AND DENYING IN PART THEIR AMENDED MOTION FOR SUMMARY JUDGMENT [34]**

---

Demario Davis was driving home in the early morning hours when he was pulled over by Officer Chris Franckowiak. Because Davis refused a breathalyzer, Franckowiak arrested Davis and took him to the hospital for a blood test. There, Davis asserts that Franckowiak directed Elizabeth Plecha, a physician's assistant, to perform a rectal search to look for drugs. Defendants maintain Plecha performed a digital rectal exam because of Davis' complaints of back pain and bowel incontinence.

Based on that rectal search, Davis sued Franckowiak, the City of Novi, Providence Park Hospital and its staff Elizabeth Plecha and Kara Vidusic ("Hospital Defendants"). Davis agreed to voluntarily dismiss several tort claims and his *Monell* claims. (R. 40.) Remaining are claims of excessive force, failure to intervene, unlawful search and seizure, and conspiracy brought pursuant to 42 U.S.C. § 1983; claims of assault and battery and intentional infliction of emotional distress under state law; and *respondeat superior* claims against the hospital. (R. 1, 40.)

All Defendants now move for summary judgment.[1] (R. 33, 34.) The Hospital Defendants also seek partial dismissal pursuant to Federal Rule of Civil Procedure 12(c). (R. 32.) Based on the parties' extensive briefing, the Court does not believe oral argument will aid in the resolution of these motions. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, both Franckowiak's and the Hospital Defendants' motions for summary judgment will be granted in part and denied in part. The Hospital Defendants' partial motion to dismiss will also be granted in part and denied in part.

## I.

In the early hours of June 21, 2014, Davis was driving home on I-96 after an evening at the Lucky Strike bowling alley when a City of Novi police officer, Chris Franckowiak, initiated a traffic stop. (R. 33-2, PageID.1755–58.) Franckowiak asked Davis to take a breathalyzer test, but Davis repeatedly refused. (R. 33-2, PageID.1761.) So Franckowiak arrested Davis and, after obtaining a search warrant from a state court judge, took Davis to Providence Hospital to get his blood drawn. (R. 33-2, PageID.1761.)

At the hospital, Kara Vidusic, a nurse, drew Davis' blood pursuant to the warrant; and Elizabeth Plecha, a physician's assistant, performed what she deemed a digital rectal exam. Davis describes it as an unlawful rectal search for drugs. What each party did, and why, is in dispute. So what follows is each side's version, though the Court recognizes that it has to view the facts in the light most favorable to Davis.

---

[1] Franckowiak states that he brings his motion for summary judgment pursuant to both Federal Rules of Civil Procedure 12(b)(6) and 56(c). (R. 33, PageID.1705.) But Franckowiak cannot now bring a motion to dismiss pursuant to Rule 12(b)(6) as he answered the complaint on August 10, 2016 (R. 13). *See* Fed. R. Civ. P. 12(b). Also, he never cites the standard of review for a motion to dismiss. (R. 33, PageID.1709.) So the Court will only consider this motion pursuant to Rule 56.

2

According to Franckowiak, after arriving at the hospital with Davis, he checked in with registration and showed the warrant for the blood draw. (R. 33-5, PageID.2291.) After waiting a few minutes, Davis and Franckowiak were taken to a room for the blood draw. (R. 33-5, PageID.2292.) Franckowiak handcuffed one of Davis' arms to the bed. (*Id*.) Nurse Vidusic came into the room to perform the blood draw. (R. 33-5, PageID.2300.) Because Davis physically resisted, Franckowiak held one of his arms to restrain him. (R. 33-5, PageID.2301.) After the blood draw, Franckowiak told either physician assistant Plecha or Vidusic that Davis wanted to see a physician for neuropathy problems, because Davis previously expressed that to him. (R. 33-5, PageID.2305.) Franckowiak then packed up the blood draw samples and stepped into the hall to complete paperwork. (R. 33-5, PageID.2306.) He testified that he could not hear what was happening between Plecha and Davis. (R. 33-5, PageID.2308.)

Based on the documentation she reviewed, Plecha testified that she saw Davis before the blood draw. (R. 33-3, PageID.2098–99.) She testified that she must have met with him because he requested to see a physician, as a blood draw would not require a physician's presence. (*Id*.) She testified, however, that Franckowiak never told her anything about Davis requesting medical treatment. (R. 33-3, PageID.2129.) She completed a report pursuant to her evaluation. (R. 33-3, PageID.2103, 2110; R. 31-4.)

According to Plecha's report, Davis told her that he was having low-back pain and that he lost control of his bowels when the police handcuffed him. (R. 33-3, PageID.2131–33.) Plecha decided, based on her medical opinion, to perform a digital rectal exam to check for "rectal tone and to assess for any saddle anesthesia." (R. 33-3, PageID.2170; R. 37-9, PageID.2985–86.) Plecha told Davis that she was going to perform a digital rectal exam. (R. 33-3, PageID.2138.) And Davis obliged, voluntarily turning on his side to allow Plecha to perform the exam. (R. 33-3,

3

PageID.2084.) However, Plecha did not notice any evidence that Davis had soiled himself. (R. 33-3, PageID.2094.)

For her part, Vidusic has no independent memory of that night. (R. 33-4, PageID.2203.) She testified, after reviewing the records, that she performed the blood draw and completed triage notes for Davis, based upon the medical history he provided. (R. 33-4, PageID.2221; R. 31-5.)

Bridget Yousif worked registration that night. (R. 37-9, PageID.3036–3037; R. 37-6, PageID.2838.) When a patient arrives, Yousif is responsible for preparing a "patient facesheet" that reflects the patient's chief complaint. (R. 31-8, PageID.1181–84.) At the time of Yousif's deposition, Defendants had produced only one facesheet for Davis which listed "blood draw" as his chief complaint. (R. 37-8.) Defendants subsequently produced another factsheet that listed "neuropathy" as another basis for admission. (37-10.) Yousif's signature is also on a general consent form for Davis—a form that is not necessary for a blood draw when police have a warrant, as was the case here. (R. 37-6, PageID.2855.) She testified that, although she had no recollection of that night, she would have only signed the consent form if Davis gave her verbal consent to do so. (R. 37-6, PageID.2857.) She testified that, generally, if someone is handcuffed, people will give verbal consent and she will sign for them. (R. 337-6, PageID.2857.)

Dr. Robert Edwards was the supervising physician for Plecha that night. (R. 31-6, PageID.1123–24.) He testified that he would not see a patient who was only at the hospital for a blood draw. (R. 31-6, PageID.1123.) Although he did not recall physically examining Davis, he testified that he would have only obtained the information in his report by examining the patient. (R. 31-6, PageID.1126–29.) He also does not recall providing Plecha permission to perform the rectal exam, but added that Plecha did not need his permission to do so. (*Id.*) He agreed, however,

4

that Plecha's "medical decision making was appropriate and medically necessary." (R. 31-6, PageID.1144.)

Davis testified to a very different series of events.

Once at the hospital, Davis was taken directly to a room for the blood draw. (R. 33-2, PageID.1768–69.) His left arm was handcuffed to a stretcher. (*Id*.) The first person he spoke to was Vidusic. (R. 33-2, PageID.1765–66.) He gave her his medical history, including his history of back pain, current back pain, and current medications. (R. 33-2, PageID.1964, 1973, 1986.) She also took his vitals. (R. 33-2, PageID.1963.) While he relayed his medical history, he did not ask for any medical treatment for his back nor did he request to see a doctor. (R. 33-2, PageID.1778, 1908, 1986.) Davis resisted the blood draw, so hospital security held his legs, Officer Franckowiak put his elbow on Davis' neck, and Vidusic drew blood from his handcuffed left arm. (R. 33-2, PageID.1775–79.)

After the blood draw, Davis heard Officer Franckowiak tell Plecha from behind the hospital curtain by his bed, "he's hiding something. We need to do a rectal." (R. 33-2, PageID.1780, 1783.) Plecha responded, "okay, I'll do a rectal." (R. 33-2, PageID.1783.) Plecha then pulled back the curtain to enter the room. (*Id*.) Officer Franckowiak followed, removed the handcuffs from Davis' left hand, and handcuffed both hands to the right side of the stretcher forcing him on his side. (R. 33-2, PageID.1787.) He told Plecha, "he's drunk, high and all of the above." (R. 33-2, PageID.1922.) Then, in the presence of Officer Franckowiak, Vidusic held his body down and Plecha performed a rectal exam. (R. 33-2, PageID.1789–92.) Davis asked, "what [are] you . . . doing?" and Officer Franckowiak replied, "you're making matters worse." (R. 33-2, PageID.1793.) After the exam, he heard Plecha say "good tone" to Officer Franckowiak. (R. 33-

5

2, PageID.1800.) Davis described the pain from the exam as "ten [out of ten]," some of the worst pain he has experienced. (R. 33-2, PageID.1795.)

Davis states that he did not mention his current back pain until after the rectal search, when he spoke with Dr. Edwards. (R. 33-2, PageID.1778.) He testified that the doctor asked him a few questions about his medical history, surgery history, and current medications. (R. 33-2, PageID.1836.) The doctor also examined his surgical scar on his back. (R. 33-2, PageID.1838.)

Davis maintains that he never gave his consent for any type of medical evaluation or treatment that night. (R. 33-2, PageID.1834.) He certainly never consented to a digital rectal exam. (R. 33-2, PageID.1963.) He also denies talking to anyone from registration, ever being read a consent form, or ever giving someone permission to sign a consent form on his behalf. (R. 33-2, PageID.1766, 1961, 1969.) Davis denies any instances of bowel incontinence and denies ever telling anyone that occurred. (R. 33-2, PageID.1957–58.) He asserts the information on the medical forms indicating that he sought treatment for neuropathy is fraudulent. (R. 33-2, PageID.1966.)

All charges against Davis (resisting, operating while intoxicated, and having a weapon while intoxicated) were dismissed. (R. 33-2, PageID.1909, 2014.)

**II.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

When a defendant moves to dismiss pursuant to Rule 12(c), the motion is evaluated under the same legal standards as Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 437 n. 5 (6th Cir. 2007). Under Rule 12(b)(6), the plausibility standard governs. See *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[ ] the court to draw the reasonable inference that the defendant is liable[.]" *Id.* at 678.

### III.

Before addressing the merits, the Court must first determine whether it can take Davis' account of the events for purposes of evaluating the summary-judgment motions. Defendants claim that his version is unsupported by evidence and suggest that it is completely contradicted by the record. (*See* R. 33, PageID.1709–10; R. 34, PageID.2321–29.) Defendants argue that any factual disputes are not genuine because Davis produced nothing but his testimony. (R. 33, PageID.1709 (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 912–13 (6th Cir. 2009).) And, based on their use of the evidence, they also appear to assert that Defendants' deposition testimony and medical records make Davis' account unbelievable. (*See, e.g.,* R. 34, PageID.2339–40.)

But Davis' sworn deposition testimony is evidence that can be considered by the Court and is sufficient to create a genuine issue of material fact. *See Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010); *Moran v. Al Basit LLC*, 788 F.3d 201 (6th Cir. 2015).

Nor is this a situation where a reasonable jury could not believe Davis' testimony because his version is rendered fiction by the record. "When opposing parties tell two different stories, one

7

of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372 at 380–81 (2007). The story must be "blatantly contradicted" not just by *any* evidence, but only by *objective* evidence, *Booher ex rel. T.W. v. Montavon*, 555 F. App'x 479, 484 (6th Cir. 2014), that "speak[s] for itself," *Oliver v. Greene*, 613 F. App'x 455, 457 (6th Cir. 2015) (noting that "deposition testimony, affidavits, and prison records" do not qualify as evidence that speaks for itself).

Here, the only evidence that can arguably be construed as "objective" is the medical records. But, even assuming these records are objective, they do not "speak for [themselves]" to "blatantly contradict" Davis' version of the facts. Davis' version is that he provided his medical history, including his back pain, but never asked for treatment, never stated that he suffered from bowel incontinence, and never gave consent for a rectal exam. The records do not state that Davis requested medical treatment for his back. Nor do they state that he had an episode of incontinence. Nor did he sign the consent form. Thus, Davis' testimony is not blatantly contradicted by the medical records. In order to "blatantly contradict" his version, the Court would need to "interpret [the records] in line with [Defendants'] argument and [Defendants'] supporting evidence." *Oliver*, 613 F. App'x at 459. While the records "might persuade a jury" not to believe Davis' version, they do not unequivocally contradict Davis' version of events. *Id*.

So the Court will take the facts in the light most favorable to Davis.

## A.

The Court begins with Franckowiak's motion for summary judgment.

**1.**

Franckowiak first asserts that qualified immunity shields him from the excessive-use-of-force, unlawful-search, and failure-to-intervene claims. (R. 33, PageID.1711.)

Qualified immunity shields government officials performing discretionary functions from suit under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants are entitled to qualified immunity if "(1) they did not violate any of [plaintiff's] constitutional rights or (2) the violated rights, if any, were not 'clearly established' at the time of the alleged misconduct." *Ruffin v. Cuyahoga County, OH*, 708 F. App'x 276, 278 (6th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Once qualified immunity is properly raised, the plaintiff must establish that Defendants are not entitled to it. *Id*. (citing *Kennedy v. City of Cincinnati*, 595 F.3d 327, 336 (6th Cir. 2010)).

Davis brings multiple § 1983 claims based upon Plecha's rectal search. And because Franckowiak did not actually perform the search, he alleges that he can only be liable if Plecha was his agent following his instruction to search Davis for contraband. (R. 33, PageID.1712.) While the Court does not necessarily agree that Franckowiak can "only" be liable if Plecha was his agent, even accepting that premise, summary-judgment is not warranted.

"[T]o trigger Fourth Amendment protection under an agency theory, the police must have instigated, encouraged, or participated in the search, and the individual must have engaged in the search with the intent of assisting the police in their investigative efforts." *United States v. Robinson*, 390 F.3d 853, 871–72 (6th Cir. 2004). "[A] private individual does not act as a government agent where the intent of the private party conducting the search is entirely

independent of the government's intent to collect evidence for use in a criminal prosecution." *Id*. at 872 (internal quotation marks omitted).

Franckowiak asserts that no reasonable jury could find that Plecha acted as his agent when she performed the rectal search. (R. 33, PageID.1713.) In his view, Davis has put forth nothing more than a belief that he directed Plecha to perform the search and that Plecha agreed. (*Id*.) Further, Plecha testified that she performed the search based on her medical evaluation. (*Id*.)

But Franckowiak fails to take the facts in the light most favorable to Davis. Doing so reveals that there is an issue of material fact as to whether qualified immunity applies.[2] Davis testified that he heard Franckowiak tell Plecha to perform a rectal search on Davis because "he was hiding something." (R. 33-2, PageID.1783.) And, says Davis, Plecha agreed to do it. (*Id*.) Franckowiak then stepped out from behind the curtain, handcuffed Davis' other arm to the bed, forcing him on his side, and Plecha performed the search. (*Id*.) Also under Davis' account, he never asked for medical assistance with his back, so Plecha would have no independent intent for conducting the search. So a reasonable jury could find that Plecha acted with the intent of assisting Officer Franckowiak in his investigation for drugs – i.e., as Franckowiak's agent. *See Booker v. LaPaglia*, 617 F. App'x 520, 524 (6th Cir. 2015); *see also Harlan v. Bolton,* No. 17-cv-00028, 2017 U.S. Dist. LEXIS 58998, *11-12 (M.D. Tenn. Apr. 17, 2017) ("As to the Defendant physicians and hospital, the Court finds that the complaint states a colorable claim as to whether

---

[2] Frankowiak argues that it is unreasonable to infer that Plecha acted as Frankowiak's agent because Frankowiak never suspected that Davis was hiding drugs, as evidenced by him giving permission to Davis to use the restroom alone at the police station prior to taking Davis to the hospital. The Court will not consider this argument as it was raised for the first time in Frankowiak's reply brief. *See Sundberg v. Keller Ladder*, 189 F. Supp. 2d 671, 682–83 (E.D. Mich. 2002) ("[I]t is not the office of a reply brief to raise issues for the first time." (citing *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993)); *see also Lexicon, Inc. v. Safeco Ins. Co. of America, Inc.*, 436 F.3d 662, 676 (6th Cir.2006) (a district court properly declines to consider an issue raised for the first time in a reply brief).

these Defendants were acting as state agents. An officer cannot use private parties to conduct illegal [rectal] searches.")

Other than agency, Franckowiak puts forth no other argument for why he did not violate Davis' constitutional rights. So the Court turns to whether the right to be free from rectal searches without a warrant or consent was clearly established at the time of the incident.

A constitutional right is clearly established if "existing precedent . . . ha[s] placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)). "'[T]here need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional.'" *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

Davis points to *United States v. Booker*, 728 F.3d 535 (6th Cir. 2013), as a case clearly establishing that a warrantless and unconsented-to rectal exam is unconstitutional. In *Booker*, police officers brought the plaintiff to a private doctor who proceeded to chemically subdue the plaintiff and probe his rectum without a warrant. The doctor recovered crack cocaine. The plaintiff moved to suppress the crack cocaine on the grounds that the search violated the Fourth Amendment. In vacating the lower court's decision, the Sixth Circuit held that Supreme Court precedent "shows that the unconsented paralysis, intubation, and rectal examination amounted to an unreasonable search, which violated Booker's Fourth Amendment rights." *Id*. at 547–48. Helpfully, the Court of Appeals added, "We of course do not address cases that may be materially different, such as where the police have obtained a court order, where the police were not aware of the extent of the bodily intrusion, where the police were not aware of the lack of necessary

consent, where the suspect was not in the control of the police, where the private actor was independently privileged to act, or where other exigencies were at play." *Id*. at 548.

Although Franckowiak stresses that the facts here are less severe than they were in *Booker*, the differences do not fall into any of the situations the Sixth Circuit identified. Moreover, any factual differences are not material. Like in *Booker*, the police did not have a court order to search Davis' rectum. Officer Franckowiak was aware of the extent of the bodily intrusion, as Davis says he told Plecha to search Davis' rectum. And he knew that Davis did not consent to the search: he handcuffed Davis to the bed so the search could be conducted. Also like *Booker*, Davis was in police custody. Without Davis requesting assistance or providing consent, Plecha was not independently privileged to act. The Court cannot think of any exigencies in this situation that would warrant a different result. It was thus clearly established law at the time of the search that Franckowiak's conduct violated the Fourth Amendment. *See also George v. Edholm*, 752 F.3d 1206, 1220 (9th Cir. 2014) (holding that, on March 13, 2004, it was clearly established that the Fourth Amendment protects people from medical procedures induced by law-enforcement officers).

But *Booker* only concerns an unlawful search. It did not address whether certain warrantless, unconsented-to rectal searches violate the Fourth Amendment because they constitute excessive force or a failure to intervene. And Davis does not cite to any other case or make any other argument in response to Franckowiak's assertion of qualified immunity with respect to these claims. Thus, only his unlawful-search claim will survive.

**2.**

Franckowiak also seeks dismissal of Davis' conspiracy claim.

Franckowiak first contends that Davis failed to adequately plead this claim. (R. 33, PageID.1719 (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1537 (6th Cir. 1987)). But the proper vehicle to challenge the adequacy of the pleadings is a motion to dismiss. *See Spadafore v. Gardner*, 330 F.3d 849, 853–54 (6th Cir. 2003); *Victor v. Roscommon Cty. Prob. Dep't*, No. 11-15143, 2012 WL 1598138, at *2 (E.D. Mich. May 7, 2012) ("The applicable discussion in *Gutierrez* [] was not pursuant to the summary judgment standard in Federal Rule of Civil Procedure 56."). Franckowiak chose instead to answer the complaint and, after discovery, file a motion for summary judgment. Thus, the Court will look beyond the pleadings and ask whether a reasonable jury could find that the Defendants engaged in a civil conspiracy based on the entire record.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). To establish a civil conspiracy claim, Davis must show that (1) a "single plan" existed, (2) Defendants "shared in the general conspiratorial objective" to deprive Plaintiff of his constitutional rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to Plaintiff. *Bazzi*, 658 F.3d at 602. "Rarely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire[; thus,] circumstantial evidence may provide adequate proof of conspiracy." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000) (internal quotation marks omitted)

Franckowiak argues that Davis produced no evidence that Defendants had a single plan. But again, Franckowiak's argument is based on the Defendants' version of events.

Davis has produced evidence of a "general conspiratorial objective" to violate his constitutional rights —his own testimony. (R. 37, PageID.2389–92.) According to Davis, Plecha,

13

Vidusic, and Franckowiak developed a plan to search Davis' rectum for drugs. (R. 37, PageID.2389.) Davis testified that he heard Franckowiak ask Plecha to perform a rectal exam to search for drugs and he heard Plecha agree, and they—along with Vidusic—acted in concert to help the unlawful search occur (R. 33-2, PageID.1783). *See Bazzi*, 658 F.3d at 606. Lastly, all three committed an overt act in furtherance of the conspiracy: Franckowiak handcuffed Davis' hands to the side of the bed such that he was forced to be on his side (R. 33-2, PageID.1787), Vidusic held him down (R. 33-2, PageID.1789–92), and Plecha performed the actual search (R. 33-2, PageID.1789–92).

The Court finds that, based on this testimony, and recognizing the Defendants tell a different version, a reasonable jury could find that Franckowiak, Plecha, and Vidusic engaged in a conspiracy to effectuate an unlawful search. Franckowiak is not entitled to summary judgment on the conspiracy claim.

### 3.

Franckowiak lastly argues that he is entitled to summary judgment on Davis' intentional tort claims—assault and battery and intentional infliction of emotional distress—as the claims are barred by governmental immunity. (R. 33, PageID.1724–25.) Under Michigan's Governmental Tort Liability Act, M.C.L. 691.1401, *et seq.*, individual governmental defendants are entitled to immunity for intentional torts when (1) the acts were undertaken during the course of employment, (2) the employee acted or reasonably believed that he was acting in the scope of his authority, (3) the acts were performed in good faith or without malice, and (4) the acts were discretionary, not ministerial. *Odom v. Wayne County*, 760 N.W.2d 217, 228–29 (Mich. 2008) (citing *Ross v. Consumers Power Co.*, 363 N.W.2d 641 (1984)). Franckowiak argues that Davis failed to produce any evidence that he acted with malice and without good faith. (R. 33, PageID.1725.)

14

But as Davis points out, the burden is on Franckowiak to establish that he acted without malice. *See Odom*, 760 N.W.2d at 225 ("The proponent of individual immunity must establish that he acted without malice"). And again, construing the facts in the light most favorable to Davis, Franckowiak fails to make this showing. His lack of malice argument seems to be that Davis did not have a problem with him at the police station, and there is no evidence that Franckowiak suspected Davis was hiding drugs or caused the rectal search. (R. 33, PageID.1725.) But this ignores Davis's testimony that Franckowiak asked Plecha to do the rectal exam without a warrant and without Davis' consent, and then handcuffed him to his side to allow Plecha to conduct the search. And the fact that Franckowiak does not identify anything in the record that would have given him reason to believe that Davis was hiding drugs in his rectum or needed to have this type of search undertaken further supports that he is not entitled to immunity on these claims as a matter of law.

Franckowiak makes no other argument for why he is entitled to summary judgment on the intentional-tort claims. These claims will survive.

## B.

The Court next moves to the Hospital Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c).

### 1.

The Hospital Defendants first challenge the adequacy of Davis' failure-to-intervene claim. The Hospital Defendants argue that Davis failed to set forth any facts or legal bases for why they should have a constitutional duty to intervene when they are not public officials. (R. 32, PageID.1659 (citing *Durham v. Nu'Man*, 97 F.3d 862 (6th Cir. 1996).) Further, they argue, the "Plaintiff has also failed to identify what action the Hospital Defendants were to take to intervene

in and/or to take to prevent any action by a police officer or even what action of the police the Hospital Defendants were to stop and prevent." (R. 32, PageID.1660.)

The Court agrees. Davis' § 1983 failure-to-intervene claim lumps Franckowiak and the Hospital Defendants together. (R. 1, PageID.11.) The count reads:

> 53. Police officers have an obligation to protect citizens from constitutional violations by other fellow officers and any other individual that a fellow officer directs to violate a constitutional right. Therefore, an officer who witnesses other officers violating an individual's constitutional rights is liable to the victim for failing to intervene.
>
> 54. DEFENDANT FRANCKOWIAK and the HOSPITAL DEFENDANTS had a duty to intervene when witnessing Plaintiff being unlawfully assaulted and searched by DEFENDANT OFFICERS and HOSPITAL DEFENDANTS respectively. DEFENDANT OFFICERS and HOSPITAL DEFENDANTS either partook in the unlawful assault and/or search and/or failed to intervene in order to protect Plaintiff from the violation of his civil rights.

(R. 1, PageID.11.)

Davis does not allege any underlying intervention obligation of the Hospital Defendants. Paragraph 53 solely concerns a police officer's obligation to intervene. He does allege that Plecha and Vidusic both actively participated in the search, so, without alternatively pleading it is not plausible that they also failed to intervene in their own actions. *See Peterson v. Heymes,* 277 F. Supp. 3d 913, 926 (W.D. Mich. 2017) ("Participation in the alleged constitutional violations and a failure to intervene claim are functionally alternative theories; a single defendant could not be liable for both.") Davis also fails to directly address this claim in his response. (*See* R. 38.) Davis' failure-to-intervene claim against the Hospital Defendants will be dismissed.

The Hospital Defendants also move to dismiss Davis' civil conspiracy claim. (R. 32, PageID.1660.) As previously stated, the elements of a civil conspiracy under Section 1983 are "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Robertson v. Lucas*,

16

753 F.3d 606, 622 (6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez*, 826 F.2d at 1538.

Davis' conspiracy pleadings do more than provide "vague and conclusory allegations." He pleads, "Defendant Officers and Hospital Defendants impliedly or expressly conspired and agreed to violate Plaintiff's constitutional rights and to cover up their own and each others' misconduct, acting in furtherance of this conspiracy as more fully described above." (R. 1, PageID.13.) And the facts "more fully described above" make clear that Davis is pleading that Frankowiak and the hospital staff decided to conduct a cavity search of Davis, Frankowiak told Plecha to conduct the search and she agreed, Frankowiak and Vidusic assisted while Plecha conducted the search, and Plecha fabricated a story to cover up the unlawful conduct. (R. 1, PageID. 6–9.) The Court finds that Davis' pleadings of conspiracy are sufficiently specific to withstand a challenge pursuant to Rule 12(c).

Davis' conspiracy claim against the Hospital Defendants will survive.

### C.

The Hospital Defendants also filed a motion for summary judgment.

### 1.

The Hospital Defendants first assert that they are entitled to summary judgment on Davis' § 1983 claims because neither Plecha nor Vidusic were acting under "color of state law."

They argue that one way to test whether a private actor acted under color of state law is if "a state 'exercise[d] such coercive power or provide[d] such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Lansing*

*v. City of Memphis*, 202 F.3d 821, 829 (6th Cir. 2000) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)).

But as discussed in connection with Franckowiak's similar argument, Davis is not relying on the "coercion" theory to identify Plecha and Vidusic as state actors. Instead, he is relying upon *Booker*, 728 F.3d at 543, and Booker's subsequent civil suit against the doctor, *Booker v. LaPaglia*, 617 F. App'x 520 (6th Cir. 2015), to argue that Frankowiak used Plecha and Vidusic as agents to conduct an unlawful search. The material facts in *Booker* that lead the Sixth Circuit to find state action are present here: Davis was in police custody, Frankowiak knew he had no warrant to search Davis' rectum, and he used hospital personnel to conduct the search. Further, and unlike in *Booker*, Frankowiak himself instructed Plecha to conduct the search in order to recover drugs and Vidusic assisted Plecha in conducting that search. Construing the facts in the light most favorable to Davis, Franckowiak was not merely assisting Plecha after she independently decided to perform the search. *See Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 614 (6th Cir. 2018); *Rudy v. Village of Sparta*, 990 F. Supp. 924, 930–31 (W.D. Mich. 1996). The Hospital Defendants' version is that they performed the rectal exam because Davis complained of back pain and bowel incontinence. But that is contested. Under Davis' account, Plecha would not have performed the search and Vidusic would not have helped had Franckowiak not instructed Plecha to perform the search. In other words, on the record before the Court and the ruling in *Booker*, the Court cannot find, as a matter of law, that Frankowiak did not use Plecha and Vidusic as agents to perform an unlawful search.

But again, Davis' agency claim is limited to the rectal search. And while he cites case law holding that police officers or hospital staff at state-run hospitals are liable for excessive force when they fail to prevent it, (R. 37, PageID.2384 (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th

Cir. 1997); *Durham v. Nu'Man*, 97 F.3d at 866–67)), he makes no argument for why these private Hospital Defendants should be deemed state actors for an excessive-force claim. Only Davis' Fourth Amendment unlawful-search claims will survive as to the Hospital Defendants.

## 2.

Lastly, the Hospital Defendants move for summary judgment on Davis' state-tort claims.

They say Davis cannot establish that he did not consent to the rectal exam. Thus, his assault and battery and intentional infliction of emotional distress claims must fail. (R. 34, PageID.2334, 2346.)

This argument, again, ignores Davis' version of the facts. He testified that he did not seek medical treatment, he did not consent to a rectal exam, and he was held down and handcuffed so Plecha could perform the search. There is a genuine issue of material fact as to whether Davis consented. As lack of consent is the only argument raised by Defendants, summary judgment is not warranted on the state law claims.

## IV.

For the foregoing reasons, the Court will GRANT IN PART AND DENY IN PART Frankowiak's motion for summary judgment (R. 33). The remaining claims against Frankowiak are for unlawful search in violation of the fourth amendment, civil conspiracy, intentional infliction of emotional distress, and assault and battery. The Court GRANTS IN PART AND DENIES IN PART the Hospital Defendants' partial motion to dismiss (R. 32), and GRANTS IN PART AND DENIES IN PART their motion for summary judgment (R. 34). The remaining claims against Plecha, Vidusic and the Hospital are unlawful search in violation of the fourth amendment, civil conspiracy, intentional infliction of emotional distress, and assault and battery.

SO ORDERED.

Dated: September 4, 2018                                       s/Laurie J. Michelson
                                                               U. S. DISTRICT JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 4, 2018.
+

                                                               s/Teresa McGovern
                                                               Case Manager Generalist